<u>**NOT FOR PUBLICATION**</u>

|  |  |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>FOR THE DISTRICT OF NEW JERSEY | **FILED**<br>JAMES J. WALDRON, CLERK<br><br>August 4, 2008<br><br>U.S. BANKRUPTCY COURT<br>NEWARK, N.J.<br>BY: <u>/s/Diana Reaves,</u> Deputy |

|  |  |  |
|---|---|---|
| IN RE: | : | CHAPTER 11 |
|  | : |  |
| EnCap Golf Holdings, LLC, | : |  |
|  | : | CASE NO.:  08-18581 (NLW) and |
|  | : |                      08-18590 |
| Debtor. | : |  |

**Before:**    **HON. NOVALYN L. WINFIELD**

<u>**A P P E A R A N C E S :**</u>

David M. Bass, Esq.
Cole, Schotz, Meisel, Forman & Leonard
Court Plaza North
25 Main Street
Hackensack, NJ 07601
Attorneys for Debtor

Mark Kaufman, Esq.
McKenna, Long & Aldridge
230 Park Avenue
Suite 1700
New York, NY 10169
Co-Counsel for Movant

Brian Corgan, Esq.
Kilpatrick Stockton
1100 Peachtree Street
Atlanta, GA 30309
Co-Counsel for Movant

Alyson M. Fiedler, Esq.
Louis DeLucia, Esq.
Stephen Jones, Esq.
Greenberg Traurig, LLP
200 Park Ave
Florham Park, NJ 07932
Attorneys for Creditors Committee

Peter D'Auria, Esq.
Office of the U.S. Trustee
One Newark Center, Suite 2100
Newark, NJ 07102
United States Trustee

Alan Nisselson, Esq.
Windels Marx Lane & Mttendorf, LLP
120 Albany Street
New Brunswick, NJ 08901
Attorneys for Wachovia Bank

Scott C. Shelley, Esq.
Quinn, Emanuel, Urquhart, Oliver & Hedges
51 Madison Ave,22nd Floor
New York, NY 10010
Attorneys for Lexington Insurance Co.

Bruce D. Buechler, Esq.
Lowenstein Sandler PC
65 Livingston Avenue
Roseland, NJ 07068
Attorneys for New Jersey Meadowlands Commission


This matter is before the court on a motion by MACTEC Development Corporation ("MACTEC") for authorization to proceed with arbitration, and to modify the automatic stay, as necessary. For the reasons set forth below, the court finds that the motion must be denied.

**JURISDICTION**

The court has jurisdiction to consider the matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and the Standing Order of Reference issued by the United States District Court for the District of New Jersey on July 23, 1984. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(G). The following constitutes the court's findings of fact and conclusions of law required by Federal Rule

of Bankruptcy Procedure 7052.

**STATEMENT OF FACTS**

On May 8, 2008 ("Petition Date"), EnCap Golf Holdings, LLC ("EnCap") and NJM Capital, LLC (collectively, "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. The Debtors have continued in possession of their property and management of their business affairs as debtors-in-possession since the Petition Date. Within the first few weeks of the case, the United States Trustee appointed an Official Committee of Unsecured Creditors ("Creditors' Committee) to represent the interests of unsecured creditors in these cases.

Prior to the Petition Date, EnCap entered into a development agreement with the New Jersey Meadowlands Commission ("NJMC") to remediate and develop certain landfill sites in the area of northern New Jersey generally known as the Meadowlands (the "Project"). In furtherance of its remediation and development efforts, EnCap also entered into agreements with MACTEC under which MACTEC agreed to supply certain services and materials for remediation of landfill sites. Under the Second Amended and Restated Agreement Providing for Design and Construction Services Relating to the Meadowlands Landfill Closure Project, dated July 29, 2005 ("MACTEC Agreement"), EnCap agreed to provide an insurance policy providing coverage for the MACTEC Agreement that specifically gave MACTEC the right to bring a direct motion against the insurer for payment. *MACTEC Agreement, § 9.01(g).*

In December 2005 Lexington Insurance Company ("Lexington") issued a Solid Waste Closure Policy (the "Lexington Policy") to EnCap. Section VIII, Paragraph K of the Lexington Policy provides, in pertinent part, that

> In the event that payment of a Claim or any portion of a Claim for Closure Costs payable solely with respect to Closure Costs payable to MACTEC under the MACTEC Contract is not approved or paid by [Lexington] within thirty-five (35) days of [Lexington's] receipt of the EnCap Approved Contractor Costs for payment as described in paragraph Q of this Section VIII of the Policy, [Lexington] and [EnCap] agree and acknowledge that MACTEC shall have the ability to bring a direct action against [Lexington] for payment of such Claim, or portion of a Claim, as well as an action for any claims arising out of, or relating to, nonpayment by [Lexington] under the Policy as if MACTEC were [EnCap].

Additionally, Paragraph K provides for arbitration of any payment disputes that cannot be timely resolved by Lexington.

For purposes of the pending motion, two other provisions of the Lexington Policy are important. Item 8 of the Declarations provides for a Self-Insured Retention for Coverage A in the amount of $128,543,031 (50% to be paid pursuant to the EIT Deposit Agreement and 50% to be paid by the EIT Loan) and a Self Insured Retention for Coverage B in the amount of $5,774,163.[1] The Lexington Policy also contains a "Self Insured Retention" provision, and its application is explained in Section VI, Paragraph C of the policy as follows:

> C.    Self Insured Retention
>
> Self Insured Retention shall apply to all EIT Closure Costs covered under Coverage A and to all Non-EIT Closure Costs under Coverage B up to the Self Insured Retention amount for such coverage section, which Self-Insured Retention amount is identified in Item 8 of the Declarations. The insurance provided by this Policy shall be excess over the applicable Self-Insured Retention amount set forth in Item 8 of the Declarations. In no event shall [Lexington] be responsible to make any payment under this Policy that falls within the Self-Insured Retention, and the risk of uncollectibility (in whole or in part)

---

[1] Coverage A encompasses Environmental Infrastructure Trust ("EIT") Closure Costs for Closure Work done at the Avon Landfill, Kingsland Landfill, Lyndhurst Landfill, and Rutherford Landfill. Coverage B encompasses Non-EIT Closure Work at the same sites. *Lexinton Policy, Section I.*

4

>   of such Self-Insured Retention is expressly retained by [EnCap] and is not in any way or under any circumstances assumed by [Lexington]. [Lexington] shall have no liability for payment of EIT Closure Costs and Non-EIT Closure Costs under the Policy until the Self-Insured Retention has been paid by [EnCap].

Though the parties have not elaborated on MACTEC's performance under the MACTEC Agreement, it appears that as of the Petition Date considerable services had been rendered and that MACTEC has not received all of the compensation to which it believes it is entitled.[2] Based on §9.01(g) of that agreement and Section VIII, Paragraph K of the Lexington Policy, MACTEC claims that it presently has a direct cause of action against Lexington to recover the payments due. MACTEC requests that it be permitted to arbitrate its payment claims against Lexington and that the automatic stay be modified to permit it to provide notice and take all actions in connection with the arbitration. EnCap, the Creditors' Committee and Lexington oppose the MACTEC motion largely on the grounds that the Lexington Policy is a significant estate asset and that MACTEC cannot seek arbitration against Lexington until the Self-Insured Retention is exhausted.[3] According to Lexington, at present, approximately $48 million in EIT Closure Costs have been paid on account of the Self-Insured Retention. *Affidavit of Joseph Mattiassi ("Mattiassi Aff.)* ¶ 4).

---

[2] The court notes that MACTEC filed a proof of claim on May 14, 2008 in the amount of $21,995,675.00. (Claim #1, Claims Register). Further, it appears that EnCap has challenged the adequacy and quality of some of the services.

[3] Lexington is opposing the MACTEC motion under a full reservation of rights. It specifically notes that its position that the Lexington Policy is an estate asset is subject to the continued existence and validity of the policy, and that its participation in the present matter is not a waiver of its right to assert recission or cancellation of the policy.

**DISCUSSION**

The issue before the court is whether the automatic stay arising under 11 U.S.C. § 362 prevents MACTEC from initiating an arbitration proceeding against Lexington. MACTEC's fundamental position is that the automatic stay is not applicable because (i) the funds payable under the Lexington Policy are not estate Property and (ii) MACTEC's contractual right to proceed directly against Lexington for payment does not affect EnCap or its estate. However, apparently as a matter of courtesy and caution, MACTEC requests relief from the automatic stay in the event that the court views the arbitration proceeding against Lexington as affecting EnCap and its estate.

### A.    The Lexington Policy is Property of the Estate

Property of the bankruptcy estate is defined as "all legal or equitable interest of the debtor in property as of the commencement of the case." *11 U.S.C. § 541(a)*. More particularly, the Third Circuit has observed that "[i]t has long been the rule in this Circuit that insurance policies are considered part of the property of a bankruptcy estate." *ACandS, Inc. v. Travelers Cas. and Sur. Co.,* 435 F.3d 252, 260 (3d Cir. 2006)(citing *Estate of Lellock v. The Prudential Ins. Co. of Am.* 811 F.2d 186, 189 (3d Cir. 1987)). This Court finds that MACTEC's effort to commence arbitration against Lexington is an act to exercise control over the Lexington Policy. As such, MACTEC's proposed arbitration against Lexington falls within the scope of § 362(a)(3) which protects the bankruptcy estate from "any act to obtain possession of property of the estate or to exercise control over property of the estate," and MACTEC must obtain relief from the automatic stay in order to proceed.

EnCap and the Creditors' Committee also argue that the proceeds of the Lexington Policy

6

are property of the bankruptcy estate. If what they mean by this argument is that EnCap's right to have properly submitted claims satisfied from the policy is a valuable property interest protected by the automatic stay, the court agrees. In *Tringali v. Hathaway Machinery Co.*, the First Circuit stated that particularly when confronted with substantial liability claims within the coverage of the policy, the insurance policy may be the estate's most valuable asset. *796 F.2d 553, 560 (1st Cir. 1986)(agreeing with A.H. Robins Co. v. Piccinin,* 788 F.2d 994, 1001 (4th Cir. 1986)). It further observed that

> Any contrary holding could start a race to the court house whenever a policy is too small to satisfy several potential plaintiffs. Such a race could mean unfair results as between potential plaintiffs; it could also prevent a bankruptcy court from marshaling the insurance proceeds, and, along with other assets, arranging for their distribution so as to maximize their ability to both satisfy legitimate creditor claims and to preserve the debtor's estate.

*Id.*

However, the court is skeptical of the soundness of their argument that EnCap has a property interest in the policy proceeds because (i) EnCap is a named insured and (ii) EnCap Submitted Costs are distinguished from Contractor Submitted Costs under the Lexington Policy. The court's reading of the policy language suggests that the distinction is one of procedure rather than substance. Whether submitted by EnCap, MACTEC or any of the other Scheduled Closure Contractors identified on Endorsement No. 2, payments made under the Lexington Policy are to be made for the Closure Costs as a result of Closure Work.[4] Thus, it appears that claims paid under the Lexington

---

[4]Under the Lexington Policy, the term Closure Costs means reasonable and necessary EIT Closure Costs and Non-EIT Closure Costs incurred solely for or with respect to or in furtherance of Closure Work. The term Closure Work means activities defined in Endorsement 1, 5 and 6, performed by Scheduled Closure Contractors. (*Lexington Policy, Section V and Endorsements* 1, 5 and 6).

Policy are for the benefit of the Scheduled Closure Contractors. But, the court need not decide the issue, because as set forth in the following paragraphs, the MACTEC motion is premature.

### B. The Self-Insured Retention

Under § 362(d)(1) the movant must set forth the cause for its request to terminate, modify or annul the automatic stay. The burden then falls on the parties opposing stay relief to prove that there is no cause for relief from the automatic stay. *11 U.S.C. § 362(g).*

MACTEC contends that it bargained for and has a valid and binding arbitration provision, as set forth in Section VIII, Paragraph K of the Lexington Policy, and that the application of the twelve factors enumerated in *Sonnax Indus., Inc. v. Tri Component Prod. Corp. (In re Sonnax Indus.), 907 F.2d 1280, 1286-87 (2d Cir. 1990)* weigh in favor of permitting an arbitration to proceed against Lexington. However, the court finds that it is premature to consider either the arbitration provision or the *Sonnax* factors because it appears to the court that the Self-Insured Retention has not been exhausted and under the terms of the Lexington Policy, Lexington has no liability for claims based on EIT Closure Costs or Non-EIT Closure Costs until the Self-Insured Retention is exhausted.

Lexington has provided unrebutted evidence that approximately $80.5 million of the Self-Insured Retention for Coverage A remains. Further, Section VI, Paragraph C explicitly provides that Lexington is not responsible to make any payment that falls within the Self-Insured Retention, and that Lexington "shall have no liability for payment of EIT Closure Costs and Non-EIT Closure Cost under the Policy until the Self-Insured Retention has been paid by [EnCap]. Given this express limitation of liability, MACTEC's right to a direct action against Lexington has not yet come into

8

being.  There is no language in Section VIII, paragraph K that overrides the limitation on Lexington's liability that is described in Section VI, Paragraph C.  In fact, Paragraph K of Section VIII of the Lexington Policy is entirely consistent and compatible with Paragraph C of Section VI.  Read together, it is apparent that Section VIII Paragraph K describes for MACTEC an alternative means of seeking payment after the Self-Insured Retention is exhausted.

## **CONCLUSION**

The Lexington Policy is an asset of the EnCap estate and relief from the automatic stay is required before MACTEC may commence an arbitration against Lexington.  Because the Self-Insured Retention has not been exhausted, Lexington has no obligation to make payments under the Lexington Policy and MACTEC's right to commence an arbitration against Lexington cannot be implemented.  Accordingly, there is no cause to grant relief from the automatic stay in favor of MACTEC.

Dated: 8/4/08

_____
JUDGE NOVALYN L. WINFIELD
United States Bankruptcy Judge